States of America vs. Alan Brown. Ms. Haywood. May it please the Court. Rebecca Haywood on behalf of the United States of America. And with the Court's permission, I request three minutes for rebuttal. Thank you. We are here today on a very narrow, single issue of whether the District Court applied the appropriate legal standard when it granted Mr. Brown's motion to suppress. Obviously, our contention is the District Court did not apply the correct legal standard. How can you argue that the District Court did not apply the correct legal standard, and you agree, of course, that the correct legal standard is one of recklessness. That's correct. When explicitly the District Judge uses language of recklessness and cites to our Court's major precedent, Wilson vs. Russo, on the principle. How is that not applying the correct legal standard? The District Court has an obligation to do more than state the test correctly. It has to actually apply the test, and the District Court in this case, in one paragraph, four sentences related to Agent Smith found recklessness. Four sentences. The majority of which clearly indicate negligence. The District Court faulted Agent Smith for not reading witness reports. Isn't that essentially a sufficiency of the evidence argument that you're making? The Court, yes, invoked, encanted, spoke the words of recklessness, but the evidence that it recited didn't rise to the level of recklessness. Isn't that really a sufficiency argument? No, Your Honor. Our argument is that the specific statements of the District Court speak to negligence, and the reason we're hampered in an appeal of the factual finding of recklessness is because of the limited nature of the findings here. You agree it's a factual finding? Absolutely. If the case goes back and we should lose again and then there was a determination of an appeal and there are specific findings, that would be the point at which this Court would address  Isn't what you're really saying, though, is that the District Court came to the wrong conclusion on the law? Isn't that what you're really saying, in light of what the District Court said? Yes. You're arguing that their conclusion was wrong. Well, we're arguing that it spoke to negligence, but yet the Solicitor General, as this Court may be aware, approves the specific issue for appeal. The Solicitor General's position was she found specifically that the question of negligence was put forth by the District Court and it needs to go back. Well, that's the Solicitor General, but that governs what you do. That doesn't govern what we do. That's correct. Certainly. And the government's position is when it goes back, the record in this case would not actually support a subjective determination that Agent Smith actually seriously doubted what he said in this affidavit. A subjective determination. Where do you find that requirement in our jurisprudence? That requirement comes from Wilson, which states that the test, the courts of appeals have applied the test from the Supreme Court in St. Amant, the same test that applies in actual malice cases, which is that you have to subjectively actually believe. No, no, no. Wilson v. Russo nowhere uses language of subjective belief. All right. Give me the language. Where is there a test of subjective knowledge in our cases? Well, actually, in the Yusuf decision, and I believe it's footnote two, it talks about the state of mind of the agent, and that actually comes from Franks. Franks made clear that this is not, negligence is not recklessness. There has to be more than negligence. And yes. Assuming that there is a subjective test under Franks and Wilson, can't we say that the paragraph 7C was crafted so as to lead the magistrate judge into thinking that there was a continuous series of events which witnessed by witnesses of the transfer of the vehicles? Well, couldn't we look at that, couldn't the magistrate have seen that and looked at it as a subjective belief by the affiant that there was a continuous series of events? That's correct. Well, then why would not, even if it is a subjective test, why would that satisfy Franks? Well, Agent Smith actually subjectively believed at the time that he submitted the affidavit to Agent Malika for signature that the information was correct. He subjectively believed that the information was correct in the affidavit. And the district court's findings, in his opinion, do not specifically address a credibility determination on that point. And that is what is required here. And it's important to keep in mind what happened here. This is an exclusion. This is the, in effect, the exclusion of evidence that's going to prevent this case from proceeding. It's a very significant one. We're not at that level at this point. Why couldn't the court view the affidavit as looked at by the magistrate judge as concluding that the agent passed the affidavit in such a way that he should have known more facts before making the allegations that there was a continuous series of events? Could the district court look at it in that light? Well, the question is not what Agent Smith should have known. It's a question of what he actually believed at the time he submitted this. It's a question of what the agent actually believed subjectively. That's the government's position. Assuming that's true and that there is a subjective test. Can't the district court have viewed this as requiring the agent to have, when he made this affidavit, to be in possession of the information from the, that there was no series of transfers of vehicles immediately? But the testimony from Agent Smith was that he believed that that was true based on his conversations with Trooper Lash, who was the lead investigative agent. Does the court have to believe him? Is that a credibility question here? It's exactly a credibility question that the government feels was not specifically addressed by the district court. Let me ask you, if the government, if the district court does not credit what the agent said, would you acknowledge that this appeal is affirmed? No, Your Honor, because if the district court has an obligation to say the reasons why he didn't believe him, and then we'd be in a position where we could actually have factual findings that we could attack. Our position is there are not specific factual findings that allow us or would even allow this court to make the determination as to whether the district court applied that test properly. Doesn't the truth have some relevance here on the subjective finding? Well, actually, yes, and that was one of the government's points below and one of the points that the district court failed to address, which is there is no reason on this record for Agent Smith to have lied. The facts as they actually exist support a determination of probable cause. The district court failed specifically to address that point. The district court didn't say that the agent lied. The district court's determination doesn't turn on a conclusion that the agent lied, or consciously or deliberately misstated, does it? It turns on whether the agent was subjectively aware and subjectively had a reason to doubt what he was saying was true, and there's nothing in the statements from the district court that indicate that the district court specifically found that he had serious doubts about what he was saying in the affidavit. In fact, the district court's lack of an address of the actual facts here, which there was absolutely no reason for reckless conduct or intentionally false conduct because the facts as they exist. I know from the decision by the district court that he did not credit the agent. That is something that we had discussed in terms of whether an implied finding of him seriously doubting what he was saying was enough, but it shouldn't be enough for three reasons. First, because without an implication, without specific findings as to why he doubted, the district court didn't say here he was nervous. I don't think he looked like he was telling the truth. There were such minimal factual findings that a meaningful review from this court is hampered. Second, in a related point, it hampers the government's ability to attack findings that are nonexistent by the district court. And third, this is actually an application of the exclusionary rule in a very violent bank robbery, and there should be more than implied findings. There should be specific factual findings on these points. Of course, if you are wrong on the law and it is sufficient to rule on the matter through application of an objective standard, then the findings of the district court, specifically the recitation of all of the witnesses and what they said, and that it was recorded in reports that were created by the state police, and that those existed out there, and that the affidavit nonetheless was prepared without regard to any of that, would certainly be sufficient to meet an objective test, wouldn't it? You've got all those findings, if you will, that would be sufficient to meet an objective test. I think there's a difference between an objective test and what Wilson says, which is that there are things out there that would create an obvious reason to doubt what he's saying. Do you agree, then, that Wilson creates an objective test or states an objective test? Well, no, I think there's a distinction. I respectfully disagree. I don't think saying that there are obvious reasons to doubt what you're saying means that it's actually an objective test. What does the word obvious mean? Obvious means that there are things out there and findings that would have led Agent Smith to know. Objectively, for anyone, if they're obvious. But, for instance, here there's a specific finding that Agent Smith did not carefully read the reports. If there was a finding that he had actually read the report, that would indicate that he should have had a reason to know, but I'm sure the court has looked at the report. It's very dense, very difficult to read, and as a matter of fact, the AUSA who handled the case I spoke to him, he didn't even realize the mistake until it was brought to the attention by defense counsel. So it's not like this was an obvious error on his part. But, again, if there had been a finding that he read the report by the district court that Agent Smith had not testified truthfully, that he read the report and he should then have known, that was an obvious reason to doubt what he was saying. But there was the contrary finding. The district court found that Agent Smith did not actually read that report carefully, and as a matter of fact, the affidavit was actually prepared, it's just a small note, on January 26th. The report was not received until January 29th. Again, we are not trying to make excuses for the mistake. It wasn't forwarded to the Baltimore office until after the report was received. That's correct. What about the omission? Did the court specifically make a finding that if the material that was omitted had been included that there would not be probable cause? Absolutely not. It's our position that the district court did make a finding in dicta that the omission was recklessly made with regard to John Wingate being a suspect. But the district court went on to say on page 23, I believe, of the appendix, that it was not going to reach the question because it had found the false statement actually required that evidence be suppressed. That's in the last sentence or so of the opinion. The court didn't reach it because it didn't have to? That's right. Thank you. I'm going to ask one question. I won't bother you anymore. I'm not going to vouch for my brethren. Where in the record is there any evidence that there was a false statement? I think in the record, agent Smith's inability to explain how he took truthful information, which did not include statements that witnesses had seen the things that he said they'd seen and came up with an affidavit that made those false statements. Where in the record is it that agent Smith was aware that there was not actually a transfer of vehicles, we'll say, that he thought what he put in the affidavit was incorrect, or he made that statement with total disregard for whether it was correct or incorrect? The record is indisputable that Trooper Lash, who conducted the investigation and interviewed the witnesses, that he gave accurate information to agent Smith, none of which included the interviewing of witnesses who saw what agent Smith said they saw. And we also have agent Smith saying, yes, I received accurate information from Trooper Lash, and Trooper Lash never told me that the witnesses saw the meetup or the subsequent drive away. That's all factual. But the question, if it is a subjective test, if it is a subjective test, is whether when he made the affidavit, presented it, whether he knew it was false or he included information without any regard to whether it was false or true, recklessly. And although that information you've related is correct, you've got to show that you've got to show a state of mind if the subjective test prevails here. And where is it in the record? What you say is true, but where the record is that the judge found that he had this state of mind, i.e. knowing it was false or didn't care one way or the other whether it was false. The judge does say that he acted with reckless disregard for the truth and rejected agent Smith's repeated assertion. He said that, but that's not enough. You just can't mouth the conclusion. It's got to be, it's got to be fortified with some facts. If the judge can't make a conclusion, nothing to support it. Let me try to support what the judge said. First, the standard was preponderance of the evidence. Second, the judge assessed the credibility of agent Smith and Trooper Lash and agent Mollica at the hearing. He also found, this was a one and a half page affidavit, that the judge could look at all the evidence here, two false statements and at least three material omissions in a one and a half page affidavit. That's not enough. Because it's false or it's not true is not enough. You've got to show that he knew it was false or he didn't give a good goddamn whether it was true or false. I think what we have to show, according to the Wilson versus Russo test, is that the agent had obvious reasons to doubt the truthfulness of the statement. Well, I was waiting to hear what your position was with respect to whether this is a subjective standard or an objective standard. And in fact, the Wilson versus Russo language allows for the alternative, doesn't it? It does. Isn't the Wilson versus Russo language effectively that if you've got evidence of knowledge, if you've got evidence of something that would reach a subjective standard, all well and good. That meets the serious doubts prong. But even if you don't have that, if there's a universe of information out there, that in the alternative would provide obvious reasons to doubt the accuracy of the information reported, then you've got an objective standard, don't you? I think that's correct, Your Honor. And I think this isn't a case, and I think the government... But Ms. Long, isn't that not so much an objective standard, but rather indirect evidence? Isn't there a difference? I don't know if it's helpful to think of it in preparing for this, whether it's subjective or objective. I think the clearest thing is what this Court said in Wilson versus Russo, that the Court must make a finding that the officer had obvious reasons to doubt the truthfulness of the statement. Short of the officer getting on the... Do you say that the district court made such a finding? Yes. And I think it's amply supported by the record, both by the district courts... Isn't it supported by his conclusion as opposed to being supported by the record? No, I think it's supported by the record. There's language when the judge is making factual findings and analyzing the false statements. Where in the record does the judge make a statement that, aside from the information not being true, but we all agree with that, that he knew it was not true and he made it nevertheless, or he made it not caring whether it was true or false. Show us the facts that the judge said that support that conclusion. The judge talks about the very accurate information and detailed information provided by Trooper Lash to Agent Smith. The judge says that Trooper Lash was Agent Smith's almost exclusive, or if not exclusive, source of information. Trooper Lash says, I never told Agent Smith that witnesses made those statements. Agent Smith says, Trooper Lash never told me that. There's no miscommunication here. Everything you say is true. What Smith put down was not correct, and what Lash said was correct, that he never told him this, and Smith said, no, he never told me that. But where is it in this record, the findings by the judge, or even evidence in the case, that he knew when he made this affidavit that that information was false? If I read Wilson, it's a subjective test. You've got to show not that the information was false, but that he knew it was false. The judge, short of Agent Smith getting on the stand and saying, I knew it was false, and I put it in the affidavit, that's not the only way that we can show, or the district court could be convinced that he acted with reckless disregard for the truth. The judge did make statements about the affidavit being constructed in such a way and crafted in such a way to give a false impression, that they asserted that not, Agent Smith asserted that nonexistent evidence existed, and then purposely took the affirmative step of including that false information in the affidavit. I think it's abundantly clear that the judge is finding that there were obvious reasons to doubt that Agent Smith knew or believed the truthfulness of what he put in that affidavit when there was absolutely no support for it. Ms. Long, I asked Ms. Haywood earlier, isn't the truth here relevant? It is relevant. And doesn't the truth work against you? Because the truth on this vehicle swap, although there was no witness who saw them exchange the vehicle, there clearly were witnesses who had seen the Jetta on that street, the same street where the school's van ended up after the fact. Isn't that relevant? Because if that had been included as opposed to the statement about the Jetta swap, there wouldn't have been a problem here, at least as to the, let's forget the admissions for a second, at least as to the statements. Well, I think the truth is that two or three witnesses said they saw the Jetta parked on the street around the time of the robbery. And the truth is that one witness said she saw the Jetta, or a car that looked like the Jetta, driving on an adjacent road southbound while she was driving northbound. And then the truth is that the witness said there was a van seen at the same spot where the Jetta was parked. That's it. I mean, that's what the witnesses actually said. But the government can't get the benefit of those truthful statements when it put false statements into the affidavit. Why not? Because the rule under Franks is that those false statements are taken, removed from the affidavit. But don't you need to look at all the words? And the key words is reckless disregard for the truth. I mean, this is not a case of recklessness versus negligence versus sloppiness. You know, I think that if you have negligence on one extreme and recklessness on the other, I think there's no question that the agent Smith was sloppy. My question is, what does sloppiness mean here? Well, I think given the shortness of the affidavit, the one and a half page, the court could look at everything. He could assess what Agent Smith was saying. The defense counsel asked Agent Smith to explain how did you come up with this false statement when you knew what was true from Trooper Lash? And then the agent also, Agent Smith also wrote an affidavit or a memo, excuse me, to the field office in Baltimore with accurate information just two months prior and at the conclusion of all the witness interviews with respect to this meetup and the subsequent drive away. So I think that shows that he had an understanding of what the truth was. And then two months later, put in false information in an affidavit and was unable to explain why. So I think the court did reject Agent Smith's assertions that he believed them to be true and found that he had obvious reasons to doubt. What were the reasons? What would be the reason? And isn't that the crux of the test? What would be the reason for Agent Smith to have prepared Paragraph 7C the way he did? I don't think we have to show the motive of like why Agent Smith would have put it in, but I think they needed it to get the affidavit. That's not so. To get the warrant. There was ample probable cause as the facts actually turned out to be. What possible, if you're talking about motive or trying to figure out whether the man lied or misrepresented, if he would have put in what the actual fact was, there was ample probable cause as it was. So how could the district judge come to the conclusion that he lied or recklessly drew the affidavit to get a search warrant when if he would have said what was actual fact, he would have gotten the same search warrant? Well, I think because that's not the test. It goes to whether or not the man is lying. He had no reason to lie. The information that the government is presenting on appeal that he had no reason to lie was not what was presented at the trial level. And I don't think that the district court would have found it relevant. I think what's relevant is what did Agent Smith know and how did he come up with this affidavit that's very far from what he actually knew? Was it relevant to a defense that I lied on the affidavit, that I had no reason, I didn't benefit if it were a lie? I would have gotten the same affidavit if the objective truth had been put in. You say that's not relevant? I don't think it's relevant because I think it gives the government the benefit of the false statements. Well, but is it relevant to an evidentiary hearing? Whether or not the information supplied was potentially false? I think the officer would have to explain why he didn't provide the truthful information. Why did he put inaccurate and false information in the affidavit? What does the record show by way of an explanation in that regard? It's silent. There is no explanation. And Agent Smith is given the opportunity to explain why he included the false information and he said, I don't know. In essence, that was his response. The district court did not find Agent Smith incredible, did it? I think he implicitly did, Your Honor. He did not specifically, but I think he didn't need to go that far. I think he made statements about the deliberate crafting, affirmative and purposeful insertion of false information. And Agent Smith continually said, I believed it to be true and he rejected it. To be precise, the district judge used this language that the affidavit, quote, appears to be crafted to give the U.S. magistrate judge the false impression of a continuous sequence of events observed by a number of witnesses. Yes, and he also said it was constructed in such a way to imply that he was looking at whether or not the court applied the proper standard. It was crafted to apply that for the purpose of making false statements. More importantly, you say this affidavit was a page and a half. Now, you've seen hundreds of affidavits, have you not? Yes, Your Honor. I've seen several hundred myself. And they're all crafted in that in order to get a warrant and seeking probable cause. Every one of them is crafted. There's no such thing as a search warrant that isn't crafted. So what's the difference? What is the big deal about finding that it was crafted to obtain probable cause? That's the game. That's the idea. Just to be clear, it says crafted to give the false impression. Right. He could have said it was the choice of words, I think, is significant. It wasn't just drafted or carelessly drafted, like some of the other cases say. This was crafted in such a way for the purpose of giving a false impression. That's what the court found. And I think that's what the standard requires. And the district court was able to to use the record, the facts in the record to support that, whether he explicitly came out and said the magic words, he said the reckless disregard for the truth. And he said what the standard was in Wilson, that he had obvious reasons to doubt the truthfulness. Ms. Long, do you agree that the court did not specifically find that the omissions, the inclusion of the omissions would have left the affidavit without probable cause? He found, he did not make a finding with respect to just the omissions. He put the omissions and the false statements together and said without both of those, without the false statements and with the material omissions, the affidavit would not be sufficient for probable cause. So to answer your question, he did not make a separate finding with respect to the material omissions. But do you agree, as an experienced defense attorney, that if the affidavit had been crafted and said the truth, that there wasn't an actual transfer of cause, so be it, but what actually happened, do you agree that that would have been probable cause nevertheless? No. You think that would not spell out probable cause? I think what this was, was the officer's theory as to the case. And if the affidavit had said this officer believes that this is what transpired, as opposed to multiple witnesses saw this, that might have been different. But I'm not sure that that would have even given rise to probable cause. You don't think the magistrate judge would have found that there was probable cause with the actual facts having been stated? I don't think so, Your Honor. Thank you. This case is not about the existence of error, but the intention behind the error. Judge Smith, there's a case from the Seventh Circuit that we cited in our brief that does specifically say that the question is a subjective test. And yes, Wilson does say that when there's obvious reasons to doubt the existence of facts, that can actually circumstantially meet the subjective test. So I would just direct... What's your response to the position that the defendant takes that the affidavit, according to the judge, was crafted to give a false impression? Is that a polite, euphemistic way of saying you lied? Well, no. That statement was made in response to the government originally had argued there were two statements that were being called false. Below, before the district court, the government took the position that the second sentence in paragraph 7C was actually not false. The district court was analyzing that argument and at that point made that statement. But then it went on to say, but regardless of the intention, regardless of the intention, that statement is false. And at this point, before this court, we're conceding that point. But it was the court's actually analysis of recklessness in this case did not happen for a few further pages. And at that point, my opposing counsel said the district court didn't need to go that far. The district court does need to go that far. That's why we're asking for this case to go back. We're asking for a credibility determination that was not made by the district court. We're asking for that to be done. We understand that we could lose that point. We could certainly lose that point. But what needs to happen is the district court actually has to make that determination. And that's the government's position. Now you're asking for it to go back. Are you saying we cannot find that there was not reckless disregard for the truth based on this record? No, I would love that ruling. But the issue that we appealed was that there was legal error. So we requested a revamp in our brief. Obviously, this court can affirm or reverse on a basis that it feels warranted. So certainly it's our position on remand that there isn't going to be enough to support a finding of recklessness on this record. You heard my question to Ms. Long. Certainly, whether this agent's conduct was negligent or reckless, it was sloppy. That's conceded, Your Honor. And the affidavit was exceedingly brief. And it was not drafted initially by this agent. Well, it was drafted by an assistant U.S. attorney for a Pittsburgh agent who was dealing with a Baltimore agent on an Armstrong County case. And the government has to take responsibility for that. All of the indicia here with the district court may have very easily found no one really cared about this case enough to really get into it. Okay. Wouldn't our approval of this kind of conduct lead to rather sloppy work being done by agents in the future on cases like this? Well, in Franks v. Delaware, the Supreme Court basically addressed this question and said certainly a ruling that all negligent conduct on behalf of police officers would create some marginal deterrence. But because of the cost of the exclusionary rule, the court created a balancing decision and said only that conduct that is either intentional or reckless will result in exclusion. And because of the great societal cost of allowing a potentially guilty person to go free. So yes, in Herring v. United States, that issue was also addressed. In fact, Justice Ginsburg in her dissent specifically wanted the court to adopt a rule that all negligent conduct would result in exclusion. But the majority opinion was that simply cannot be the rule. It has to be a balancing and you have to balance the cost. And again, the government concedes that there was a mistake done. But there weren't findings that demonstrate that it was reckless. One final question. The last part of your brief seems to suggest that the panel should consider the effect of an adverse decision, a decision adverse to the government here. That we should consider the effect on Agent Smith's career. That's the government's language in the brief. And there's also a reference to Giglio, which seems to suggest a downstream impact on subsequent cases. Are you seriously suggesting that that should be a factor that this court determines to be important in the equation of whether or not there was recklessness here? No, Your Honor, but it is important. Is that just a make-weight argument? No, well, it just, the argument was made to demonstrate that without, it was basically to go to the fact that you can't have an implicit finding that he seriously doubted. Because it's not just about this case, it's about future cases. So it was more of an argument, not necessarily for the findings. Of course, if it is an objective standard, then there really shouldn't be, necessarily, any adverse implications in terms of Agent Smith or Agent Smith's honesty or integrity or any aspersions on it, should there? Well, again, it was just an argument that the impact of the decision was more than just this case. And also, again, the final thing I'll say about an objective test, it would be that that would hearken to negligence, which again, Franks and Haring, that Supreme Court has indicated is not sufficient. Well, does the information, does it have some relevance? It has relevance insofar as proving that a law enforcement official who's a career official would not likely do something like this, and that it's not something that anyone in an official position making out seeking warrants would likely make false statements knowing that it's going to have real serious adverse effects on his or her career. That's right, and that's why we would ask. It does have some relevance. True, and that's why we would ask for the credibility determination. Again, we think that necessarily has to be made by the District Court. Thank you, Your Honors. Thank you very much. We thank counsel for their very helpful arguments. We'll take the case under advisement.